A91A0400. MORRIS et al. v. CHANDLER EXTERMINATORS, INC. et al.
(409 SE2d 677)

McMURRAY, Presiding Judge.

The plaintiffs in this tort action are the individual members of the Morris family, William E. Morris, his wife Susan C. Morris, and their children Lisa Morris and Heather Morris. Defendants are Chandler Exterminators, Inc., and certain affiliated individuals including Dennis H. Chandler, president of the corporate defendant, and Jimmy Keith Chandler, general manager of the corporate defendant.

Plaintiffs' complaint alleges that the defendants undertook to treat plaintiffs' residence with chemical pesticides, including Aldrin, a hazardous carcinogen, and that the application of the chemicals was done in a negligent manner causing the contamination of various portions of plaintiffs' home. Further acts of negligence are alleged to have occurred during defendants' attempt to clean up the spilled

chemicals resulting in a further spreading of the contamination to additional portions of the residence. Plaintiffs allege that due to defendants' negligence, they have inhaled the chemicals, resulting in physical injuries to themselves which may not be fully manifested for several years. The plaintiffs also allege that their home has been rendered unfit for human habitation, that they have been deprived of the use thereof, and that the chemical contamination has substantially reduced the value of the residence and personal property therein. Additionally, plaintiffs allege that they have suffered and continue to suffer mental pain and anguish over the adverse health effects to themselves, and over the loss of value of their home and personal property. Plaintiffs' complaint seeks a judgment for general damages, mental pain and suffering, special damages, and punitive damages.

Plaintiffs appeal the superior court's grant of defendants' joint motion for summary judgment. In regard to plaintiffs' claim predicated on personal injuries, the superior court concluded that defendants had sufficiently pierced plaintiffs' allegations that the alleged negligent chemical application or cleanup had caused any personal injury or resulted in increased risk of contracting any form of cancer. In reaching the conclusion that defendants were entitled to summary judgment on the issue of personal injuries, the superior court also determined that portions of the affidavit of a neuropsychologist submitted by plaintiffs and directed to the causation issue could not be considered. The superior court's ruling that defendants were entitled to summary judgment as to the property damage issue was predicated upon a release executed by Susan C. Morris. *Held*:

1. Plaintiffs' first enumeration of error contends that the superior court erred in failing to consider the affidavit of Dr. Currie, a neuropsychologist, as admissible evidence on the causation issue in regard to their personal injury claims. Dr. Currie's vita shows that he received his Ph.D in Clinical Psychology in 1965 and has been active in a broad range of activities within his profession, involving teaching and the private practice of psychology. The affidavit of Dr. Currie shows that he specializes in the practice of clinical neuropsychology "which is that branch of psychology which deals with the behavioral expressions of brain functions and dysfunctions, including information reception, processing, judgment, retention, accessing and expression, and the ability of people to master new and novel learning situations and material." Dr. Currie evaluated each of the plaintiffs in the case sub judice and opined that each has suffered organic brain damage due to inhalation of the chemical, Aldrin. The superior court determined that while Dr. Currie was qualified, on the basis of his Ph.D in psychology, to state which mental dysfunction plaintiffs may be suffering, he was not competent to testify as to causation since he is not a medical doctor.

However, this conclusion is not well founded. The practice of psychology includes diagnosing and treating mental disorders. OCGA § 43-39-1 (2). "[O]nly a qualified expert such as a psychiatrist, *psychologist* or medical doctor would be competent to diagnose and define . . . a mental disorder." (Emphasis supplied.) *Ellis v. State*, 168 Ga. App. 757, 759 (3) (309 SE2d 924).

In *Jacobs v. Pilgrim*, 186 Ga. App. 260 (367 SE2d 49), this Court upheld admission of expert testimony by a neuropsychologist concerning the diagnosis and cause of that plaintiff's mental disorder. That decision is consistent with decisions in other jurisdictions which conclude that since psychologists are entitled, by statute, to diagnose and treat mental and nervous disorders, it is incongruous to prohibit these same health care providers from testifying concerning the cause of an affliction which lies within the area embraced by their practice: "It consequently appears to us a curious proposition that the legislature has enough confidence in the competence of non-physician health care providers to grant them licenses to practice their professions, and to authorize treatment by them to injured compensation claimants, but to have intended that those same health care providers be prohibited from testifying concerning the cause of an injury which lies squarely within the areas of their competency." *Madrid v. Univ. of Calif.*, 737 P2d 74, 76. See also *Hooper v. Industrial Comm. of Ariz.*, 617 P2d 538, 540; *Howle v. PYA/Monarch*, 344 SE2d 157 (S.C. App.); *Sandow v. Weyerhaeuser Co.*, 449 P2d 426.

While there are jurisdictions which take the opposite view, that is, that a psychologist is not qualified to provide an opinion as to an organic cause of a mental disorder, we view the superior rule to be that applied here. Many health care providers other than medical doctors possess substantial expertise as to medical matters. "[T]he law in Georgia does not require that only medical doctors be permitted to give testimony regarding a medical issue, but allows others with certain training and experience to testify on issues within the scope of their expertise." *Hyde v. State*, 189 Ga. App. 727, 728 (377 SE2d 187). See also *Avret v. McCormick*, 246 Ga. 401 (271 SE2d 832); *Jacobs v. Pilgrim*, 186 Ga. App. 260, 262 (1), supra; and *Macon-Bibb County Hosp. Auth. v. Whipple*, 182 Ga. App. 195, 196 (1) (355 SE2d 83). The superior court, having accepted Dr. Currie as a qualified psychologist and expert witness concerning the diagnosis of plaintiffs' mental ailments, abused its discretion in excluding his further opinions on the causation issue.

2. The release signed by plaintiff Susan C. Morris does not provide a basis for the grant of summary judgment as to the claims for damages of the remaining plaintiffs. The release purports to relate to the claims of the signatory only. Under the evidence of record there is at least an issue of material fact as to whether Susan C. Morris signed

as an agent of her husband, who is the sole owner of the family residence, and of her children.

Secondly, there is evidence of mutual mistake concerning the effect of the release. "An honest mistake of the law as to the effect of an instrument on the part of both contracting parties, when the mistake operates as a gross injustice to one and gives an unconscionable advantage to the other, may be relieved in equity." OCGA § 23-2-22. Susan C. Morris stated that at the time she signed the release she believed the sole effect of the document was to aid defendants being reimbursed by their insurance company (for replacement of carpet and linoleum, and for certain out-of-pocket expenses of defendants in the repair of plaintiffs' home), and that her belief in this regard was founded upon statements made to her by Dennis H. Chandler. The alleged statements of Dennis H. Chandler may be viewed as showing that he believed, as Susan C. Morris did, that the release would serve only to permit reimbursement of defendants by their insurance company and would not affect her claim against defendants. *Fulghum v. Kelly*, 255 Ga. 652, 653 (340 SE2d 589). The evidence of record does not demand a finding that Susan C. Morris' claim is precluded because of the release she signed. *Vann v. Williams*, 165 Ga. App. 457 (299 SE2d 908). The superior court erred in granting defendants' motion for summary judgment.

*Judgment reversed. Banke, P. J., Birdsong, P. J., Pope and Cooper, JJ., concur. Beasley, J., concurs specially. Sognier, C. J., concurs in the judgment only. Carley and Andrews, JJ., dissent.*

BEASLEY, Judge, concurring specially.

I join in the reversal of the judgment granting defendants' motion for summary judgment because, although I concur in the dissent with respect to the exclusion of Dr. Currie's affidavit, I agree with the majority concerning the alleged release signed by Susan Morris.

ANDREWS, Judge, dissenting.

I respectfully dissent from the majority opinion because I believe the superior court properly excluded Dr. Currie's affidavit from consideration on the causation issue with regard to the Morrises' personal injury claims. The superior court determined that while Dr. Currie was qualified, on the basis of his Ph.D in psychology, to state from which mental dysfunction plaintiffs were suffering, he was not competent to testify to causation since he was not a medical doctor. This conclusion was well founded.

Dr. Currie's speciality is clinical neuropsychology, which he described in his affidavit as "that branch of psychology which deals with the behavioral expressions of brain functions and dysfunctions, including information reception, processing, judgment, retention, acces-

sing and expression, and the ability of people to master new and novel learning situations and material." His qualifications authorized him to conclude that the Morrises suffered from organic or physical damage to the brain. It does not follow that he was authorized to testify as to the medical causation of such damage.

There is no evidence in the record to indicate that Dr. Currie has had any medical training, experience or background. Whether or not the Morrises' alleged contact with, or inhalation of, Aldrin was a causal factor in their alleged physical condition is a medical question as to which expert medical testimony was necessary. See generally *Cherokee County Hosp. Auth. v. Beaver*, 179 Ga. App. 200, 204 (2) (345 SE2d 904) (1986); *Eberhart v. Morris Brown College*, 181 Ga. App. 516 (352 SE2d 832) (1987). This question of medical causation is not a subject within the scope of psychological expertise. "The diagnosis and the causes and effects of diseases and other kindred matters of medical practice form an important field of expert testimony. Except to the extent that the physical condition of a person is open to ordinary observation by persons of common experience, opinion evidence in this field is limited to the opinions of experts — that is, of physicians." (Internal citations and quotations omitted.) *Hyde v. State*, 189 Ga. App. 727, 730 (377 SE2d 187) (1988) (special concurrence); see also *Georgia Cas. &c. Co. v. Jernigan*, 166 Ga. App. 872 (305 SE2d 611) (1983).

It is proper for a psychologist to be allowed to testify to the cause of the plaintiff's mental disorder, *when that cause is within the psychologist's expertise*. See generally *Jacobs v. Pilgrim*, 186 Ga. App. 260 (367 SE2d 49) (1988); *Macon-Bibb County Hosp. Auth. v. Whipple*, 182 Ga. App. 195 (355 SE2d 83) (1987). Therefore, if a patient suffers a mental disorder, a psychologist may testify regarding the specific cause if that cause is psychological. If a patient's mental disorder is of organic etiology, because the psychologist's training does not include the medical causes of these physical problems, he should not be allowed to testify thereon. In that situation, a psychologist may opine that the psychological state is organic in nature, but any opinion regarding the cause of the physical problem would be outside of the scope of his expertise. See generally *Will v. Richardson-Merrell, Inc.*, 647 FSupp. 544 (S.D. Ga. 1986). Here, the alleged cause of the Morrises' condition was not a matter shown to be within Dr. Currie's psychological expertise and the portions of Dr. Currie's affidavit regarding causation were properly stricken. See generally *Kriewitz v. Savoy Heating & Air Cond. Co.*, 396 S2d 49 (Ala. 1981); *GIW Southern Valve Co. v. Smith*, 471 S2d 81 (Fla. App. 2 Dist. 1985).

I believe that the superior court properly exercised its discretion in excluding the affidavit. *Macon-Bibb County Hosp. Auth.*, supra; *Anderson v. State*, 178 Ga. App. 355 (3) (343 SE2d 411) (1986). With-

out Dr. Currie's testimony on the issue of causation, the plaintiffs' claim for personal injury failed, as did all of the property damage claims based on the potential injury to humans.

Turning to the remainder of plaintiffs' claims, which are traditional property damage claims, I believe that summary judgment was proper only with respect to Susan Morris' property damage claim. Therefore, I respectfully dissent from that portion of Division 2 of the majority opinion which addresses the release Susan Morris signed.

In my opinion, any claim that Mrs. Morris had for property damage, which is not barred for the reasons stated above, was barred by the release she signed. From my review of the record, I find no evidence of artifice, fraud, or trick such as would void the release and therefore it was binding on Mrs. Morris. The record showed that Mrs. Morris was well educated and that she had ample opportunity to examine the document she signed and that no reason exists for ignoring the effect of such document. See *Hudson v. Montcalm Pub. Corp.*, 190 Ga. App. 629 (1) (379 SE2d 572) (1989); *McMullan v. Nichols*, 162 Ga. App. 865 (292 SE2d 568) (1982); *Riker v. McKneely*, 153 Ga. App. 773 (266 SE2d 553) (1980). Further, I find no clear, unequivocal or decisive evidence that there was a mutual mistake here so as to void the release. Compare *Fulghum v. Kelly*, 255 Ga. 652 (340 SE2d 589) (1986). The release effectively barred all of Mrs. Morris' claims against Chandler Exterminators, Inc. and its agents, the other defendants here. See *Driscoll v. Schuttler*, 697 FSupp. 1195 (N.D. Ga. 1988).

Although I believe that summary judgment on all of Mrs. Morris' claims was proper, I agree with the majority that a factual issue existed as to whether the release she signed operated to bar the claims of her children and husband and as to whether they had ratified her act. See *Rowland v. Lewis*, 109 Ga. App. 755 (137 SE2d 387) (1964).

In conclusion, I would affirm the trial court's order granting the defendants' motion for summary judgment, except with respect to the claims of traditional property damage of Mr. Morris and the Morris children.

I am authorized to state that Judge Carley joins in this dissent.

DECIDED JULY 15, 1991 —
RECONSIDERATION DENIED JULY 31, 1991 — ▮▮▮▮▮▮▮▮

*Wilson, Strickland & Benson, Warner R. Wilson, Jr., Samuel T. Brannan III*, for appellants.

*Richard B. Eason, Jr.*, for appellees.