Kern, Leila R., J.
INTRODUCTION
This action arises from a surgical procedure during which Kelly Monahan claims to have been injured through the negligence of the attending medical staff. Before this court is Hallmark Health Corporation’s Motion for Summary Judgment.[2] For the reasons that follow, that motion is ALLOWED.
BACKGROUND
The following facts are taken primarily from the parties’ respective Statements of Undisputed Material Fact, submitted pursuant to Superior Court Rule 9A(b)(5). Unless otherwise noted, such facts are undisputed.[3]
Monahan was admitted to Melrose-Wakefield Hospital (Hallmark) on October 3, 2003. Theodore Polys, C.R.N.A., was the certified nurse anesthetist assigned to Monahan’s surgery. On October 4, 2003, Monahan underwent an appendectomy. Monahan was intubated as part of her surgery. During that procedure, her esophagus was perforated. An infection developed and Monahan was admitted to Massachusetts General Hospital on October 14, 2003, for treatment of her injury.
At the time of Monahan’s surgery, Khaled A. Sorour, M.D., was the supervising anesthesiologist at Hallmark, and Patrick Oder, M.D., held medical privileges in radiology at Hallmark. Hallmark asserts that there was no employment contract or other agreement for services running between itself and Polys, Sorour or Oder and that each was an independent contractor. Hallmark maintains that Polys and Sorour were employees of Anesthetics of Massachusetts, P.C. (AOM), and Oder was an employee of Hallmark Imaging Associates, P.C.
AOM provided anesthesiologists and nurse anesthetists to Hallmark under a contract expressly providing that “in the performance of services under this Agreement, [AOM] and its employees and agents shall at all times act as independent contractors, not as employees or agents, with respect to [Hallmark] . . . Accordingly, [Hallmark] shall neither have nor exercise any specific control or direction over the particular methods by which [AOM] shall perform the services required by this Agreement...” The contract between AOM and Hallmark further provided that AOM employees would conform to the rules, regulations and bylaws of Hallmark, as promulgated by its medical staff and board of trustees.
The president of AOM, Fathalla Mashali, M.D., stated that he had sole responsibility for hiring, firing and supervising AOM employees. Mashali, as the president of AOM, continuously reviewed the performances of anesthesiologists and nurse anesthetists at Hallmark. Mashali assigned Polys to work at Hallmark at the time of Monahan’s surgery.
DISCUSSION
The familiar standard governing motions for summary judgment provides that summary judgment shall be granted where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983). In assessing the record on summary judgment, all reasonable inferences are drawn in favor of the nonmov-ing party. Terra Nova v. Fray-Witzer, 449 Mass. 406, 411 (2007).
Monahan suggests that Polys, Sorour and Oder were borrowed servants, acting as defacto employees of Hallmark during Monahan’s surgery. “Our test for determining borrowed servant status is ‘whether, in the particular servant status which [the person] is engaged to perform, he continues liable to the direc *456 tion and control of his master or becomes subject to that of the party to whom he is lent or hired.’ ” Hohenleitner v. Quorum Health Res., Inc., 435 Mass. 424, 434 (2001), quoting Coughlan v. Cambridge, 166 Mass. 268, 277 (1896).
Ordinarily, a physician is seen as an independent contractor, not an employee, especially “where the principal cannot control the details of the physician’s activities.” Kelley v. Rossi, 395 Mass. 659, 662 (1985), citing McMurdo v. Getter, 298 Mass. 363, 368 (1937), and Overstreet v. Doctors Hosp., 142 Ga.App. 895, 897 (1977). Furthermore, absent evidence to the contrary, there is a rebuttable presumption that an employee remains subject to the control of the original employer. Kelley, 395 Mass. at 663 n.5, citing Harrington v. H.F. Davis Tractor Co., 342 Mass. 675, 678 (1961). Hospital staff affiliation is not enough to establish an employer - employee relationship. Harnish v. Children’s Hosp., 387 Mass. 152, 159 (1982).
Here, there is no evidence in the summary judgment record to suggest that Hallmark had the right to exercise direct control over Polys, Sorour or Oder. Polys and Sorour were under the supervision and control of Mashali, as the president of AOM. While Sorour and Polys were obligated to follow rules, regulations and bylaws created by Hallmark, that obligation falls sort of giving Hallmark the right to directly control the details of the patient care given by Polys and Sorour. Compare Caranci v. Pillarisetty, Civil Action No. 01-1345, 2006 WL 3292762 *8 (Worcester Super.Ct. Oct. 25, 2006) [21 Mass. L. Rptr. 627] (Billings, J.) (while obligation to follow rules, regulations and bylaws of hospital was relevant, the determinative factor in finding residents to be borrowed servants was the hospital’s “responsibility for immediate, direct supervision of residents for patient care and related purposes” (emphasis added)).
Similarly, in the case of Oder, there is no evidence to suggest that he was subject to Hallmark’s direct control, with respect to the details of his care for patients. Contrast McNamara v. Honeyman, 406 Mass. 43, 48 (1989) (Employer set doctor’s hours and determined the ward in which he worked). Here, there is no evidence to indicate that Hallmark had the right to control either facet of the work of Polys, Sorour and Oder.
CONCLUSION AND ORDER
For the foregoing reasons, Hallmark’s Motion for Summary Judgment is, in all respects, ALLOWED.

Hallmark asserts that its proper name is Hallmark Health System, Inc. It is the corporate identity of Melrose-Wakefield Hospital.

The parties have not fully complied with the strictures of Superior Court Rule 9A(b)(5). To the extent Monahan has presented legal arguments and her own characterizations of the evidence as undisputed facts, this court does not credit her assertions. See Canale v. Gen. Motors Corp., Civil Action No. 05-3886, 2007 WL 867046 *1 (Middlesex Super. Ct. Feb. 28, 2007) (Henry, J.).